UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:21-cr-00264 |
| v. | ) | |
| | ) | Chief Judge Crenshaw |
| BRIAN KELSEY | ) | |

PLEA AGREEMENT

The United States of America, through Mark H. Wildasin, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Amanda J. Klopf, Corey R. Amundson, Chief of the Public Integrity Section of the United States Department of Justice, Trial Attorney John P. Taddei, Reagan Fondren, First Assistant United States Attorney for the Western District of Tennessee, and Assistant United States Attorney David Pritchard (collectively, "United States" or "government"), and defendant, Brian Kelsey, through defendant's counsel, Paul Bruno, David Rivera, and Jerry Martin, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

Charges and Penalties in This Case

1. Defendant acknowledges that he has been charged in the Indictment in this case with the following:

   a. Count One – Conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

   b. Count Two – Aiding and abetting the solicitation, receipt, direction, transfer, and spending of $25,000 and more of soft money in connection with a federal election,

in violation of Title 52, United States Code, Sections 30125(e)(1)(A) and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

c. Count Three – Aiding and abetting the spending of $25,000 and more of soft money from a State officeholder in connection with a federal election, in violation of Title 52, United States Code, Sections 30125(f)(1), 30101(20)(A)(iii), and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

d. Count Four – Aiding and abetting the making of excessive contributions, in violation of Title 52, United States Code, Sections 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

e. Count Five – Aiding and abetting the acceptance of excessive contributions, in violation of Title 52, United States Code, Sections 30116(a)(1)(A), 30116(a)(7)(B)(i), 30116(f), and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2. The offense carries the following maximum penalties: five years of imprisonment, three years of supervised release, a fine of $250,000, and a special assessment of $100.

2. Defendant has read the charges against him contained in the Indictment. Those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

Charges to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Five of the Indictment. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the Indictment.

Acknowledgements and Waivers Regarding Plea of Guilty

Nature of Plea Agreement

4. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney for the Middle District of Tennessee, the Public Integrity Section of the United States Department of Justice, the United States Attorney for the Western District of Tennessee, and defendant regarding defendant's criminal liability in case 3:21-cr-00264.

5. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

    a. If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the

jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the Indictment against defendant separately.

 c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

 d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

 e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

6. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

7. Defendant will plead guilty because he is in fact guilty of the charges contained in

4

Counts One and Five of the Indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

    a.    Defendant BRIAN KELSEY was a practicing attorney and member of the Tennessee Senate, representing District 31, which includes parts of Shelby County, Tennessee. In 2016, KELSEY unsuccessfully ran for an open seat to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

    b.    Federal Committee 1 was KELSEY's authorized federal campaign committee.

    c.    State Committee 1 was KELSEY's Tennessee State Senate campaign committee.

    d.    JOSHUA SMITH was the owner and operator of Social Club 1, a members-only social club in Nashville, Tennessee. In or around 2016, KELSEY was a member of Social Club 1. SMITH also controlled PAC 1, a Tennessee-registered political action committee.

    e.    Unindicted Coconspirator 1 ("UCC 1") was a Tennessee businessman and prominent political fundraiser and contributor. UCC 1 controlled PAC 2, a federal independent expenditure-only committee.

    f.    Unindicted Coconspirator 2 ("UCC 2") was a practicing attorney and member of the Tennessee House of Representatives from in or around January 2013 to in or around September 2016, when he was expelled by a vote of the House.

    g.    Political Organization 1 was a nonprofit corporation that hosted an annual political conference, published ratings on Members of Congress and State politicians, and issued political endorsements.

5

h. Individual 1 was the Director of Government Affairs for Political Organization 1 and a member of Political Organization 1's senior management team from in or around late 2015 until in or around March 2017. In that role, Individual 1 managed Political Organization 1's political expenditures during the 2015-16 federal election cycle. Individual 1 and KELSEY became engaged in or around July 2017 and married in or around January 2018.

i. Individual 2 was a member of Political Organization 1's senior management team. He worked with Individual 1 on aspects of Political Organization 1's political activities, including political expenditures.

j. Individual 3 was a practicing attorney with ties to Political Organization 2, a nonprofit corporation that publicly advocated on legal and judicial issues.

k. Individual 4 was a longtime financial supporter of KELSEY's political career.

l. On or about February 1, 2016, KELSEY announced his candidacy to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

m. On or about July 11, 2016, KELSEY, SMITH, UCC 2, and UCC 2's spouse attended a private dinner at Social Club 1. During the dinner, KELSEY gave SMITH a check transferring $106,341.66 from State Committee 1 to PAC 1. When KELSEY gave SMITH the check, KELSEY recited a rehearsed statement about SMITH using the money from KELSEY's State Campaign account however he wanted. SMITH caused that check to be deposited into a bank account associated with PAC 1.

n. On or about July 13, 2016, SMITH wrote a $56,000 check from PAC 1 to PAC 2.

6

o. On or about July 13, 2016, SMITH voided the $56,000 check and replaced it with a $60,000 check from PAC 1 to PAC 2, which SMITH gave to UCC 1.

p. On or about July 15, 2016, UCC 1 returned the $60,000 check, and SMITH, at KELSEY's implicit and UCC 2's explicit direction, replaced it with a different check transferring $30,000 from PAC 1 to PAC 2. The purpose of this transfer was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

q. On or about July 13, 2016, Individual 1 emailed SMITH, and copied Individual 2, thanking SMITH for speaking with them and attaching a Political Organization 1 contribution form.

r. On or about July 14, 2016, Individual 1 again emailed SMITH about contributing to Political Organization 1.

s. On or about July 15, 2016, UCC 2 met SMITH to finalize the contribution to Political Organization 1.

t. On or about July 15, 2016, SMITH, at KELSEY's implicit and UCC 2's explicit direction, transferred $30,000 from PAC 1 to Political Organization 1. The purpose of this transfer was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

u. On or about July 15, 2016, KELSEY emailed Individual 1 with the subject line "TN Major Votes for 2016 – Scoring." The email contained a list of important legislative votes in the State Senate that year, and links to a website that reflected how State Senators voted.

7

Case 3:21-cr-00264   Document 73   Filed 11/22/22   Page 7 of 17 PageID #: 212

v. On or about July 20, 2016, SMITH, at KELSEY's implicit and UCC 2's explicit direction, wrote a check transferring $7,000 from PAC 1 to PAC 2. The purpose of this transfer was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

w. On or about July 20, 2016, Political Organization 2 transferred $25,000 to Political Organization 1 via wire.

x. On or about July 20, 2016, UCC 2 communicated with KELSEY, Individual 2, and UCC 1 multiple times via phone.

y. On or about July 20, 2016, UCC 2 emailed UCC 1 suggesting that PAC 2 could contribute $29,800 to Political Organization 1 to support KELSEY's campaign.

z. On or about July 21, 2016, UCC 2 and UCC 1 exchanged emails about what to do with additional funds that SMITH would be contributing to PAC 2.

aa. On or about July 21, 2016, UCC 1, at KELSEY's implicit and UCC 2's explicit direction, caused PAC 2 to transfer $36,000 to Political Organization 1.

bb. On or about July 21, 2016, UCC 2 and Individual 2 communicated multiple times via phone.

cc. In total, KELSEY caused approximately $91,000 to be transferred to Political Committee 1. The purpose of these transfers was to provide funds for federal election activity to benefit KELSEY's federal political campaign to represent Tennessee's 8th Congressional District in the U.S. House of Representatives.

dd. Political Organization 1 reported to the Federal Election Commission ("FEC") that, on or about July 20, 2016, it made a $30,000 independent expenditure for

8

the purpose of a "radio media buy" to support KELSEY in the 2016 primary election when, in truth and in fact, the expenditure was coordinated by KELSEY's agents and was not independent.

    ee.    Political Organization 1 reported to the FEC that, on or about July 22, 2016, it made a $19,480 independent expenditure for the purpose of "radio media buy" to support KELSEY in the 2016 primary election when, in truth and in fact, the expenditure was coordinated by KELSEY's agents and was not independent.

    ff.    Political Organization 1 reported to the FEC that, on or about July 26, 2016, it made a $30,520 independent expenditure for the purpose of "radio/digital media" to support KELSEY in the 2016 primary election when, in truth and in fact, the expenditure was coordinated by KELSEY's agents and was not independent.

    gg.    At all times, KELSEY acted willfully, with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids, and not by mistake or accident.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

Sentencing Guidelines Calculations

8.    The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing

defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2021.

9. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

    a.    Offense Level Calculations.

        i.    The base offense level for the count of conviction is 8, pursuant to U.S.S.G. § 2C1.8(a).

        ii.    The offense level is increased by 6 levels for illegal transactions with a value more than $40,000, but less than $95,001, pursuant to U.S.S.G. §§ 2C1.8(b)(1) and 2B1.1(b)(1)(D).

        iii.    The offense level is increased by 2 levels because the defendant was an organizer, leader, manager, or supervisor of a criminal activity other than described in § 3B1.1(a) or (b), pursuant to U.S.S.G. § 3B1.1(c).

        iv.    The offense level is increased by 2 levels because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense, pursuant to U.S.S.G. § 3B1.3.

        v.    Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). If the offense level of 16 or greater, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his

intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

  vi.  The parties agree that no additional upward or downward adjustments are appropriate.

 b. Criminal History Category.

  i.  The parties have no agreement as to defendant's criminal history.

 c. Defendant is aware that any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw his guilty plea.

<u>Agreements Relating to Sentencing</u>

10. Each party is free to recommend whatever sentence it feels appropriate.

11. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea. Similarly, defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

12. Defendant agrees to pay the special assessment of $200 at the time of sentencing to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

13. Defendant understands that the government, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

14. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the government regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

15. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Offices for the Middle and Western Districts of Tennessee and the Public Integrity Section of the United States Department of Justice and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

16. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from defendant and his spouse or defendant's partnership or corporations.

### Entry of Guilty Plea

17. The parties jointly request that the Court accept the defendant's pleas of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

### Waiver of Appellate Rights

18. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the court-determined guidelines range. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18

U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the court-determined guidelines range.

## Other Terms

19. Defendant agrees to cooperate with the United States in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

20. Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his spouse and defendant's partnerships or corporations that directly or indirectly relates to or arises out of the course of conduct defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

21. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

14

Conclusion

22. Defendant understands that the Indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

23. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

24. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

25. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

26. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 11/22/22

_____
BRIAN KELSEY
Defendant

27. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 11/22/22

_____
PAUL BRUNO

_____
DAVID RIVERA

_____
JERRY MARTIN

16

Respectfully submitted,

| | |
|---|---|
| MARK H. WILDASIN<br>United States Attorney<br>Middle District of Tennessee | COREY R. AMUNDSON<br>Chief<br>Public Integrity Section |

By: _____
AMANDA J. KLOPF
Assistant U.S. Attorney

By: _____
JOHN P. TADDEI
Trial Attorney

*/s/ Brent Hannafan*
BRENT HANNAFAN
Criminal Chief

REAGAN FONDREN
Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515
Western District of Tennessee

By: _____
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee