UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:21-cr-00264-1 |
| v. | ) | |
| | ) | CHIEF JUDGE CRENSHAW |
| BRIAN KELSEY | ) | |

## GOVERNMENT'S RESPONSE OPPOSING DEFENDANT KELSEY'S MOTION FOR BAIL PENDING APPEAL

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Amanda J. Klopf, Corey R. Amundson, Chief of the Public Integrity Section of the United States Department of Justice, Trial Attorney John P. Taddei, Reagan Fondren, First Assistant United States Attorney for the Western District of Tennessee, and Assistant United States Attorney David Pritchard (collectively, "United States" or "government"), hereby provides its response to defendant Brian Kelsey's motion for bail pending appeal.   DE 165 ("Mot.").

The defendant's motion should be denied because, like many of the defendant's post-plea actions, the purpose of the motion is delay and the issue he raises—whether the government's discussion of the Sentencing Guidelines during the sentencing hearing violated the plea agreement—does not present a close or substantial question that is likely to result in reversal of his convictions or a sentence that does not include a term of imprisonment.   As further described below, the defendant's claim does not present a basis for bail pending appeal for multiple, independently sufficient reasons, including: (1) the defendant's belated claim is likely to be reviewed for plain error on appeal, where it will likely fail all prongs of the plain-error test; (2) even under *de novo* review, the record clearly establishes that the defendant breached multiple

terms of the plea agreement before sentencing, thereby forfeiting any subsequent right to enforce the agreement; (3) even though the government was no longer bound by the plea agreement at sentencing due to the defendant's breaches, the court of appeals is likely to find that the government maintained a position that was consistent with the plea agreement's express terms, though the court of appeals need not reach this issue; and (4) even if the defendant were able to overcome all of those hurdles, the likely equitable remedy for the alleged Guidelines-based breach of the plea—which would be determined by this Court on remand—would be resentencing before a different judge, not cancellation of the defendant's convictions.

## BACKGROUND

### I.     The Parties Enter the Plea Agreement.

In November 2022, the defendant appeared before this Court, was placed under oath, and pleaded guilty to Counts 1 and 5 of the Indictment.   DE 83 at 4-5, 19 (11/22/22 Plea H'g Tr.) ("Plea Tr").   The defendant's pleas were entered pursuant to a written plea agreement that was submitted to the Court.   DE 73.   The plea agreement included a factual basis section, which stated, "Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Five of the Indictment."   *Id.* ¶ 7.   The agreement continued that, "[i]n pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt."   *Id.*   During the defendant's change of plea hearing, the Court guided the defendant through his written plea agreement, confirming that the defendant had read "each and every word" of the factual basis supporting his pleas, had initialed each page, and confirmed that the information was true and correct.   Plea Tr. 8-10; *see* DE 73 at 4-9.

The plea agreement included numerous other terms and conditions.   As relevant to the instant motion, the agreement stated, "Should defendant engage in additional criminal activity after

2

he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement." DE 73 ¶ 21. The agreement also said that the "Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement." *Id.* ¶ 23. It continued that the "Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, . . . or may require defendant's specific performance of this Plea Agreement." *Id.*

As relevant to the defendant's instant claim, the agreement also had a section that addressed the United States Sentencing Guidelines (U.S.S.G.) and their role "in imposing defendant's sentence." *Id.* at 9-10. "For purposes of determining the U.S.S.G. advisory sentencing range, the [parties] agree[d] to recommend to the Court" certain offense level calculations, which were listed in the agreement. *Id.* ¶ 9.a.i-v. Following the list of calculations, the agreement stated, "The parties agree that no additional upward or downward adjustments are appropriate." *Id.* ¶ 9.a.vi.

However, the agreement also provided that "Defendant is aware that any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court." *Id.* ¶ 9.c. The agreement stated that the "Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the

3

final offense level and the final guidelines range." *Id.* It warned the defendant that, "[a]ccordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations." *Id.* As a result, the agreement contemplated additional debate over the Guidelines in the event Probation or the Court subsequently raised issues beyond those anticipated by the parties at the time of the agreement, stating: "In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer <u>any inquiries</u> and to make <u>all appropriate arguments</u> concerning the same." *Id.* (emphasis added).

Outside the provisions addressing the Sentencing Guidelines, the agreement stated that "[e]ach party is free to recommend whatever sentence it feels appropriate." *Id.* ¶ 10. Both parties also understood "that the Court is neither a party to nor bound by this Plea Agreement" and the "Defendant further acknowledge[d] that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea." *Id.* ¶ 11.

## II. **<u>The Defendant Breaches the Plea Agreement.</u>**

The Court scheduled the defendant's sentencing for March 28, 2023. DE 80. The Probation Office issued the Presentence Investigation Report ("PSR") to the parties on March 8, 2023. The PSR included additional information about the defendant's offenses and background and calculated an advisory Sentencing Guidelines range that tracked the estimates that had been included in the parties' plea agreement.

More than 100 days after pleading guilty before this Court, and on the eve of sentencing, the defendant moved to withdraw his guilty pleas. DE 93. The defendant subsequently testified under oath before this Court at an evidentiary hearing related to that motion. DE 119 at 19-123 (5/16/23 H'g Tr.) ("Withdrawal Tr."). The defendant repeatedly asserted that he had knowingly

4

and intentionally lied under oath at his change of plea hearing when he told the Court that he was guilty of Counts 1 and 5 of the Indictment. *Id.* at 42-43, 84, 100, 104, 106-07, 113-14. The defendant also repeatedly testified that he did not commit the acts set forth in the factual basis supporting his pleas, despite his earlier sworn written and oral statements that the factual basis was correct. *Id.* at 76, 91, 94, 109, 118-20, 123. Pressed by the Court for specifics of what the defendant believed was inaccurate in his factual basis, the defendant rejected the core of the unlawful coordination scheme to which he pleaded guilty. *Id.* at 119. He stated, "I'm here to tell you today, Your Honor, I did not tell these people to make these donations." *Id.* Later during the hearing, the defendant doubled down on that false statement, declaring unequivocally, "I 100 percent did not commit these things that I'm accused of." *Id.* at 123. At the conclusion of the hearing, the Court denied the defendant's motion to withdraw, stating that it did "not find [the defendant's] assertions persuasive," that his claims "at least permit[] the suggestion of some kind of tactual gamesmanship," and, given the defendant's "particular education and background, could permit a finding that his testimony here may not be entirely truthful." *Id.* at 201, 207.

III.   **Based on the Defendant's Post-Plea Conduct, the Probation Office Recommends a New Guidelines Enhancement for Obstruction of Justice.**

In the aftermath of the withdrawal hearing, the Probation Office issued a Revised Presentence Investigation Report ("8/4/23 PSR"). The PSR included a base offense level and several enhancements that were consistent with the parties' estimates in the plea agreement, as well as a denial of any downward adjustment for acceptance of responsibility because, at the withdrawal hearing, "the defendant, on multiple occasions, denied responsibility for any of the offenses to which he previously pleaded guilty." *Compare* 8/4/23 PSR ¶¶ 48-50, 54, 55, 57, 58, 62; 8/4/23 PSR Add. at 2-3, *with* DE 73 ¶ 9. These calculations would have yielded an offense

5

level of 18 and, based on the defendant's Criminal History Category of I, a recommended Guidelines range of 27-33 months of imprisonment.  *See* DE 134 at 3 (defendant estimating that his Guidelines range would be 27-33 months without the obstruction enhancement).

However, the Probation Office also recommended an additional 2-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, that was not included in the version of the PSR filed before the defendant's withdrawal hearing.  8/4/23 PSR ¶¶ 46, 47, 59.  The Office applied the 2-level obstruction enhancement based on a finding that the defendant had "lied, under oath, at his Change of Plea Hearing."  *Id.* ¶¶ 46, 47, 59; *Id.* Add. at 2.   This enhancement resulted in a total offense level of 20, which yielded a recommended Guidelines range of 33-41 months of imprisonment.   8/4/23 PSR ¶ 89.

## IV.   **The Government Expressly Relies on the Text of the Plea Agreement to Describe Facts Relevant to the New Obstruction Enhancement and Forecasts Legal Argument at Sentencing; the Defendant Does Not Object.**

A week before the rescheduled sentencing hearing, the government filed its position regarding the defendant's revised PSR.  DE 135.  The government noted that the Probation Office had "recommend[ed] an additional 2-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1" that was not included in the parties' estimates in the plea agreement.   *Id.* at 2.

The government stated that, "[a]t the time the parties entered into the plea agreement in November 2022, they agreed that 'no additional upward or downward adjustments [to the offense level] are appropriate' beyond those listed in the agreement."   *Id.* at 2-3 (quoting DE 73 at 11).  As a result, the government maintained that it "does not advocate for the application of the obstruction enhancement."   *Id.* at 3.   The government observed, "[n]otably, though, the plea agreement states that, '[i]n the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended [in the plea

6

agreement], the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.'" *Id.* (quoting DE 73 at 11). As a result, the government described facts from the defendant's withdrawal hearing that the Court might consider relevant to its contemplation of the new enhancement. *Id.* at 2. Relying explicitly on the quoted language from the plea agreement, the government also stated that "if at the sentencing hearing the Court requests the government's assessment of whether the defendant's post-plea conduct falls within the definitions provided in § 3C1.1, the government will provide its assessment." *Id.* at 3.

Four days later, the defendant filed a 29-page supplemental sentencing memorandum. DE 146. The defendant did not raise any objection to the government interpretation of the plea agreement's clause addressing unanticipated Guidelines adjustments and how it might bear on the parties' arguments at the upcoming sentencing hearing depending on the Court's actions.

**V.     At the Court's Request, the Government Provides Its Assessment of the Law while Deferring to the Court on Whether to Apply the Obstruction Enhancement; the Defendant Does Not Object or Move to Withdraw His Plea.**

At the sentencing hearing, defense counsel objected to the revised PSR's recommendation of the 2-level obstruction enhancement. DE 157 at 9-11 (8/11/23 H'g Tr.) ("Sent. Tr."). Counsel claimed "it's clear under the case law" that to qualify for the enhancement "there has to be a specific statement of fact that is determined to be perjury" and that "the PSR points to the November [plea hearing] statement saying 'I was guilty' as the perjured statement." *Id.* at 10. Counsel argued that "doesn't make a lot of sense, because, if that's perjury, then the PSR says he should get two points for being innocent." *Id.* This argument echoed the defendant's position in his presentencing filings that he was ineligible to receive the enhancement. DE 134 at 2-4.

Counsel also raised an "objection to how the government's seeking to use [uncharged conduct in] the PSR in making their sentencing argument." Sent Tr. 9. Those allegations were

7

included in "three paragraphs in the PSR" that were unrelated to the defendant's post-plea conduct. *Id.*; *see* 8/4/23 PSR ¶¶ 39-41. The defendant raised no other objections to the government's presentencing filings.

Next, the Court asked to "hear from the government." Sent. Tr. 11. The government responded by addressing "the disputed facts in [paragraphs 39 through 41 of] the PSR." *Id.* It stated that it "would not object to the Court's statement on the record that they will not impact the defendant's sentence." *Id.*

At that point, the Court asked the government, "Anything you want to say on the objection to the -- to the obstruction of justice?" *Id.* The government responded:

> Yes, Your Honor. As the Court is, of course, aware, that enhancement was not contemplated in the plea agreement between the parties, which, of course, was entered into before Mr. Kelsey moved to withdraw his plea. Therefore, the government defers to the Court on its application.
>
> However, consistent with the terms of the plea agreement, it appears the Probation Office and the Court is inquiring with respect to the propriety of that two-level enhancement.
>
> We would note that in Application Note 4B of Sentencing Guidelines Section 3C1.1, committing, suborning, or attempting to suborn perjury, including during the course of a proceeding, if it's conducted in front of the Court on matters related to the conviction, that that two-level enhancement can apply.
>
> As, of course, this Court is aware, when Mr. Kelsey testified before this Court at the hearing to withdraw his plea, he repeatedly admitted that he lied at his change of plea hearing when he said he was guilty. Subsequent to that, while on the stand he also emphatically and repeatedly stated that he did not commit the acts set forth in the factual basis supporting his pleas, despite his earlier sworn statement that he had.
>
> As the Court ruled at the plea withdrawal hearing, the Court can rely on the statement of facts that was entered as true, and, therefore, the defendant's statements, including, but not limited to, "I 100 percent did not commit these things that I'm accused of," on page 119 of the withdrawal transcript, were perjurious and support application of the two-level enhancement.

8

Sent. Tr. 11-13.

The government then sat down, and the Court had the following exchange with defense counsel:

> [THE COURT:] So, Mr. Little, I'm going to give you the last word on your objection.
>
> MR. LITTLE: Your Honor, I think the government's come pretty close to violating the plea agreement. It sure sounds like they're advocating for those two points, and they can't do that.
>
> THE COURT: Well, I asked him what he thought.
>
> MR. LITTLE: I understand, Your Honor. But if you ask him to violate the plea agreement, it doesn't mean he doesn't violate the plea agreement.
>
> I think the end -- at the end of the day there are statements that have been to be specifically found within the Sixth Circuit precedent that are false. A statement that "I did not do something," generally an assertion of innocence, is not found in the Sixth Circuit law to be a perjury without a factual basis that those things had occurred. And so the general statements that you heard him say on the stand were general denials "I didn't do this crime."

*Id.* at 13.

Defense counsel briefly continued to argue the merits of whether the obstruction enhancement applied and sat down. *Id.* at 13.

The Court proceeded to rule on the defendant's objections, first overruling the defendant's opposition to the obstruction enhancement. *Id.* at 14-19. The court observed that "the government does not have to move for the enhancement for it to be appropriate, nor should it, given that the parties agreed in their plea agreement that it intended to cover all adjustments and enhancements, and the agreement does not contemplate that a defendant will attempt to walk away from it." *Id.* at 16. "Besides," the Court added, "and as the plea agreement recognized in this

9

case, the final decision is for the Court to make, as it must." *Id.* The Court held that the "specific perjurious statements Mr. Kelsey made to the Court were at least two" based on his "confess[ions]" at the hearing on his motion to withdraw his guilty plea": "One, he was not truthful when he told the Court that he was, in fact, guilty of Counts One and Five; and, two, he was not truthful when he told the Court that he, in fact, engaged in the behavior set forth in the factual basis section of his plea agreement." *Id.* at 18-19. The Court also overruled the defendant's preexisting written objection to the PSR's failure to grant him a reduction for acceptance of responsibility. *Id.* at 19. Consistent with the revised PSR, the Court calculated the defendant's Guidelines range to be 33 to 41 months of imprisonment. *Id.* at 23.

Following these determinations, the Court asked defense counsel whether he had "[a]ny additional objections." *Id.* Counsel responded, "Nothing additional, Your honor." *Id.*

After extensive argument regarding the 18 U.S.C. § 3553(a) factors, the Court varied downward and sentenced the defendant to a below-Guidelines term of 21 months of imprisonment. *Id.* at 116. This sentence was also below the Guidelines range of 27-33 months that the defendant had requested, and therefore it was below the Guidelines range that would have been applicable if the obstruction enhancement had not been applied. DE 134 at 3. Following imposition of the sentence, the Court again asked the parties whether they had any objections to the sentence. Sent. Tr. 117. Counsel again only reiterated the objection to "the two points for obstruction." *Id.* The Court responded, "As I already stated, for the reasons I've already explained, overruled." *Id.*

Defense counsel never asked the Court to rule whether the government violated its obligations under the plea agreement, never cited the relevant provisions of the plea agreement, and never moved to withdraw the defendant's plea on the grounds that the Government had

10

breached the plea agreement.

## LEGAL STANDARDS

"The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002) (citation omitted); *see United States v. Perholtz*, 836 F.2d 554, 556 (D.C. Cir. 1987) (in decision adopting the Sixth Circuit standard, noting "[t]he law has shifted from a presumption of release to a presumption of valid conviction")*. It "requires a district court to make two findings before granting bail pending appeal." *Chilingirian*, 280 F.3d at 709. "To establish entitlement to release pending appeal, defendant must show": (1) "by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of another person or the community;"[1] and (2) "that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, or a sentence that does not include a term of imprisonment." *Id.* (citing 18 U.S.C. § 3143(b)). "[A]n appeal raises a substantial question when [it] presents a 'close question or one that could go either way.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985). This demanding standard "accord[s] with the expressed congressional intent to increase the required showing on the part of the defendant." *Perholtz*, 836 F.2d at 555-56.

In addition, the standard of review the court of appeals will apply to the defendant's claim

---

[1] In his motion, the defendant does not present any evidence or argument regarding this factor, despite the statutory burden placed on him and the requirement that the Court address this factor. The government is not aware of any evidence that the defendant poses a danger to the community. However, with respect to risk of flight, the defendant has repeatedly engaged in delay tactics and attempted to avoid the imposition of judgment and a sentence in this case. The government acknowledges that the defendant has not attempted flight since being indicted. However, the Court's imposition of a 21-month term of imprisonment gives the government pause as to whether there is "clear and convincing evidence" that the defendant does not now pose a flight risk.

11

is relevant to the analysis of whether the defendant raises a substantial question. *United States v. Clark*, 917 F.2d 177, 180 (5th Cir. 1990). The defendant's claim appears to rest on the premise that the Sixth Circuit will conduct *de novo* (*i.e.*, plenary) review of his breach contention on appeal. But that premise is dubious.

For example, the defendant's motion relies prominently on the Sixth Circuit's decision in *United States v. Warren*, 8 F.4th 444 (6th Cir. 2021). Mot. 8, 10, 16, 17. *Warren* is inapposite to this case. There, both parties agreed that the defendant had objected to the government's alleged breach of the plea agreement before the district court and thus that the court of appeals was to review whether a breach occurred *de novo*. *Warren*, 8 F.4th at 448. But whether the defendant here objected to the government's alleged breach is far less clear. The defendant's motion mentions only one possible statement as an objection—his counsel's remark to the district court that "the government's come pretty close to violating the plea agreement." Mot. 7. That is not enough.

As the Supreme Court explained in *Puckett v. United States*, 556 U.S. 129 (2009), to preserve a claim of breach during sentencing, the defendant must "object that the Government was violating its obligations under the plea agreement," "cite[] the relevant provision of the plea agreement," and "move to withdraw" the "plea on grounds that the Government had broken its sentencing promises." *Id.* at 133-34; *see United States v. Wukoson*, 798 F. App'x 551, 558 (6th Cir. 2020) (holding that defendant "did not preserve his claim because he never objected that the government violated its obligations and never argued, nor asked the district court to rule on whether, the government had breached the plea agreement"); *United States v. Griffin*, 466 F. App'x 491, 493 (6th Cir. 2012) (finding that the defendant's "objection to the PSR's recommendation to

deny credit for acceptance of responsibility" was insufficient to preserve the issue). Because the defendant's counsel did none of those things, appellate review for plain error would be more appropriate here than *de novo* review.

As described on pp. 6-10, *supra*, Kelsey's counsel repeatedly failed to object to the government's treatment of the Probation-recommended obstruction enhancement. The defendant now attempts to frame the government's presentencing transparency regarding its reading of the plea agreement as a "premeditated" breach. Mot. 12. But the defendant raised no objection in his 29-page written presentence response to the government's sentencing recommendations. Based on the defendant's lack of opposition before and during the hearing, the government reasonably understood that the defendant agreed with the government's interpretation of the plea agreement terms addressing unanticipated Guidelines adjustments and its forecasted course of action during the hearing. Then, during the sentencing hearing, defense counsel was given multiple opportunities to raise an objection that the government had breached the plea agreement. Counsel did not do so. Instead, defendant's counsel did the exact opposite, stating his view that the government had "come pretty close to violating the plea agreement," thereby suggesting to both the Court and the government that counsel was not asserting that the government had actually committed a breach. Sent. Tr. 13. When the Court subsequently gave defense counsel additional opportunities to raise any unresolved objections, defense counsel said nothing about an alleged government breach.

Sixth Circuit "caselaw recognizes that defendants are in the best position to recognize errors at sentencing and object to them." *United States v. Simmonds*, 622 F.4th 961, 966 (6th Cir. 2023). "That's why [the court has] imposed a procedural rule 'requiring district courts, after

pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised.'" *Id.* (quoting *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004)). "That rule recognizes that district courts can't be expected to catch everything without help from the parties. And that 'final opportunity for objections after the pronouncement of the sentence' allows the district court, upon objection, 'to correct on the spot' any breach of the plea agreement that the parties find relevant." *Id.* (quoting *Bostic*, 371 F.3d at 873 (citation omitted)). As noted above, after this Court asked the parties the final *Bostic* question, defense counsel made no allegation that the government had breached the plea agreement. Sent. Tr. 117.

Only now, in a motion for bail pending appeal filed more than two weeks after sentencing, does the defendant claim that the government's presentencing position on the obstruction enhancement was an "attempted end-around the plea" and that its position during the sentencing hearing amounted to a "blatant breach of Mr. Kelsey's plea agreement." Mot. 2; *see id.* at 9 (claiming "there is no question" and "no doubt" that the government violated the plea agreement). In *Puckett*, the Supreme Court explained that such tactics are the reason why a clear, contemporaneous objection is required:

> For one thing, requiring the objection means the defendant cannot "game" the system, "wait[ing] to see if the sentence later str[ikes] him as satisfactory," and then seeking a second bite at the apple by raising the claim. For another, the breach itself will not always be conceded. In such a case, the district court if apprised of the claim will be in a position to adjudicate the matter in the first instance, creating a factual record and facilitating appellate review. Thirdly, *some* breaches may be curable upon timely objection—for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement. And finally, if the breach is established but cannot be cured, the district court can grant an immediate remedy (*e.g.,* withdrawal of the plea or resentencing before a different judge) and thus avoid the delay and expense of a full appeal.

14

556 U.S. at 140 (citations and internal quotation marks omitted); *see id.* at 135 ("[O]f course the contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor."). The defendant's lack of a timely objection deprived the Court and the government of the ability to explore any of these potential remedies. Defense counsel's actions during the sentencing hearing left both the government and the Court with the indication that no breach was being alleged, and therefore, that no further record on the issue needed to be developed.

For these reasons, the court of appeals is likely to apply the plain-error standard of review. And, as the Sixth Circuit has recognized, "'[s]atisfying all four prongs of the plain-error test 'is difficult.'" *Simmonds*, 622 F.4th at 964 (quoting *Puckett*, 556 U.S. at 135). It is a particularly "high bar in any context, but especially so in 'plea-agreement cases,' where the second prong of plain-error review 'will often have some "bite."'" *Id.* at 967 (quoting *Puckett*, 556 U.S. at 143). "If, upon reading the plea agreement, the scope of the government's promises presents an arguable interpretive question, then by definition any breach cannot qualify as 'clear or obvious.'" *Id.* (quoting *Puckett*, 556 U.S. at 143). "Nor would [the court of appeals] require the district court to intervene sua sponte absent such contractual clarity." *Id.* at 967-68.

In any event, for the reasons described below, the defendant's claim does not "present[] a 'close question or one that could go either way,'" *Pollard*, 778 F.2d at 1182, regardless of whether the Sixth Circuit applies *de novo* or plain-error review.

15

**ARGUMENT**

**I.** <u>**Whether the Government Breached the Plea Agreement Is Not a Substantial Question.**</u>

Even under *de novo* review, it is unlikely that the Sixth Circuit would find that the government beached the agreement for two, independent reasons: (1) the record clearly establishes that the defendant breached multiple terms of the plea agreement before sentencing, thereby forfeiting any subsequent right to enforce the agreement; and (2) if the Sixth Circuit even reaches the issue, which it need not, it is likely to find that the government maintained a position that was consistent with the plea agreement's express terms. Therefore, the defendant's claim does not present a substantial question under either a *de novo* or plain-error standard.

> **A.** **The Defendant Forfeited His Rights to Enforce the Agreement at Sentencing.**

As described on pp. 2-5, *supra*, the defendant repeatedly breached multiple clauses of the plea agreement before the sentencing hearing by seeking to withdraw his plea and by perjuring himself under oath. To name just a few, he breached the detailed factual basis, DE 73 ¶ 7, by disclaiming it. He breached the clause requiring "his compliance with each part of this Plea Agreement," *id.* ¶ 23. And he breached the clause requiring him to refrain from additional criminal activity, *id.* ¶ 21. As the Court held, after signing his plea agreement, the defendant made multiple, "specific perjurious statements" to the Court while under oath. Sent. Tr. 18-19. The Sixth Circuit is likely to find on this record that the defendant's new conduct constituted multiple federal crimes including, but not limited to perjury, 18 U.S.C. § 1621, false declarations before a court, 18 U.S.C. § 1623, and obstruction of a judicial officer, 18 U.S.C. § 1503. These breaches forfeited the defendant's right to enforce the plea agreement during sentencing.

"[A] breaching defendant forfeits any rights to enforce a plea agreement." *Payton v.*

16

*Clipper*, No. 3:12-cv-476, 2014 WL 6750686, at *10 (N.D. Ohio Dec. 1, 2014) (unpublished) (citing *United States v. Bishop*, 306 F. App'x 934, 939 (6th Cir. 2009)); *see, e.g.*, *United States v. Sandoval–Lopez*, 122 F.3d 797, 800 (9th Cir. 1997) ("Where a defendant has breached a plea agreement, courts have found the government to be free from its obligations."); *United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994) ("[I]f a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact . . . ."); *United States v. West*, 2 F.3d 66, 69-70 (4th Cir. 1993) (defendant's breach of plea agreement "relieves the government of its obligation to conform to the agreement's terms"); *United States v. Alexander,* 869 F.2d 91, 95 (2d Cir. 1989) (stating the fundamental principle that "one party cannot be held to a bargain that the other party has breached"); *see also United States v. Skidmore*, 998 F.2d 372, 375-76 (6th Cir. 1993) ("[A] defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement." (citations and internal quotation marks omitted)).

As the Sixth Circuit has recognized, the Supreme Court endorsed that conclusion in *dicta* in *Puckett* as an alternative means of denying the defendant's request for relief even if plain-error review had not applied.   In *Griffin*, the government made the alternative argument "that there was no error because [the defendant's] criminal conduct absolved it of any obligation to recommend the [agreed-upon Guidelines] reduction at sentencing."   466 F. App'x at 494 n.2.   The court did not reach the issue because, under the plain-error standard, "whether the government's conduct actually constituted a breach of the plea agreement ha[d] no bearing on the outcome of [the defendant's] case."   *Id.*   However, citing *Puckett*, the court observed that "[d]icta suggests that the Supreme Court may well be amenable to that argument."   *Id.*; *see Puckett*, 556 U.S. at 140 n.2

17

(noting that the argument that the government was "excused from its obligation to assert 'demonstrated acceptance of responsibility' because [the defendant's] ongoing criminal conduct hindered performance . . . might have convinced us had it been pressed"). "Indeed," the *Puckett* Court suggested, "in this case the Government might well have argued that it was excused from its obligation to assert 'demonstrated acceptance of responsibility' because [the defendant's] ongoing criminal conduct hindered performance." 556 U.S. at 140 n.2 (citing 13 R. Lord, Williston on Contracts § 39.3 (4th ed. 2000)).

Due to his own breaches of the plea agreement before sentencing, which included new criminal conduct, the defendant, at a minimum, hindered the government's performance on the contract by creating the circumstances that led to the Probation Office's recommendation, and the Court's contemplation of, the obstruction enhancement and request for the government's position. These breaches forfeited any subsequent right the defendant once had to enforce the agreement. As a result, it is not likely that the Sixth Circuit will now permit the defendant to claim that a later alleged breach of the plea by the government during the sentencing hearing, brought on by the defendant's own violative conduct, provides a basis for relief from this Court's judgment of conviction and sentence.

### B. The Government Followed the Plea Agreement's Express Terms.

Courts "treat plea agreements like contracts." *Warren*, 8 F.4th at 448 (citation omitted). "So [they] use traditional principles of contract law to interpret them, and [they] enforce them according to their literal terms." *Id.* (citation and internal quotation marks omitted). "But because defendants waive certain fundamental rights when they enter plea agreements, [courts] construe ambiguities against the government." *Id.* (cleaned up). Here, the express terms of the

plea agreement unambiguously permitted the government's approach to addressing the unanticipated obstruction enhancement during sentencing.

In the plea agreement, "the [parties] agree[d] to recommend to the Court" certain offense level calculations, which were listed in the agreement. *Id.* ¶ 9.a.i-v. Following the list of calculations, the agreement stated, "The parties agree that no additional upward or downward adjustments are appropriate." *Id.* ¶ 9.a.vi. However, the agreement did not say that it would be inappropriate for the parties to provide their legal assessment of other sentencing adjustments if the facts and circumstances between the signing of the agreement and sentencing changed. *Cf. United States v. Danou*, 260 F. App'x 864, 868 (6th Cir. 2008) ("We will hold the Government to the promises it made, but we will not hold the Government to promises it *did not* make."). The ability of the parties to address unanticipated Guidelines adjustments was made clear in subsequent clauses, starting with detailed descriptions of the role of the Probation Office in conducting its own investigation prior to sentencing, and the Court's role as the ultimate interpreter of the Guidelines, regardless of the parties' positions. *Id.* ¶ 9.c. Most critically, the agreement contemplated additional debate over the Guidelines in the event Probation or the Court subsequently raised issues beyond those anticipated by the parties at the time of the agreement, stating: "In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." *Id.* (emphasis added).

It is undisputed that the parties did not anticipate the obstruction enhancement at the time of the execution of the plea agreement because it was based entirely on the defendant's perjurious post-plea conduct. Given both the Probation Office's and this Court's undisputed contemplation

19

of the obstruction enhancement at sentencing, the plea agreement permitted the government to (1) make a factual record regarding the defendant's post-plea conduct; and (2) to provide the district court with as assessment of whether, given those facts, it would be legally correct for it to apply that enhancement. That is why the express terms broadly stated that the parties "reserve the right" to "answer <u>any</u> inquiries" and "to make <u>all</u> appropriate arguments concerning" Guidelines adjustments "different from those recommended above."

The defendant does not appear to take issue with half of the government's interpretation, conceding that "provid[ing] the Court with facts [the government] deemed relevant to the Court's determination of whether to apply the enhancement" was "appropriate under the Agreement." Mot. 5. But he claims that the other half "reads the requirement that its argument be 'appropriate' out of the Agreement entirely." Mot. 13. That is plainly incorrect. An "appropriate argument" is one that addresses whether, as a matter of law, it would be correct for the Court to apply the contemplated enhancement based on the relevant facts. That is particularly necessary in a circumstance where the facts giving rise to the Court's contemplation of the enhancement arose after the plea agreement was signed, and where the Court asked the government about the applicability of the enhancement in light of those new facts. It is the only reading that respects the mandate that "[t]he government's obligation to furnish relevant information to the sentencing court does not vanish merely because the government has a corollary obligation to honor commitments made under a plea agreement." *United States v. Moncivais*, 492 F.3d 652, 664 (6th Cir. 2007) (citation omitted).

As described on pp. 2-4 and 6-9, *supra*, the government followed the process set forth in the plea agreement. In response to the Court's inquiry, the government "defer[red] to the Court

20

on [the] application" of the enhancement, but also explained why, given the relevant facts and law, it would be legally proper to apply the enhancement. Sent. Tr. 11-13. That argument was particularly appropriate given defense counsel's position that it would be legal error for the Court to apply the enhancement. Sent. Tr. 9-11; DE 134 at 2-4; *cf. United States v. Carter*, 814 F. App'x 1000, 1007 (6th Cir. 2020 (unpublished) (observing that "[a] promise to 'recommend a reduction' is not a promise to stand mute in the face of incorrect or misleading testimony offered before the trial court" (citation and internal quotation marks omitted)).

It is the defense, not the government, that fails to read things in context when it focuses on the word "appropriate" without recognizing the surrounding language about the parties "reserv[ing] the right to answer <u>any</u> inquiries and to make <u>all</u> appropriate arguments concerning" newly recommended adjustments that go beyond the parties' initial agreement. Indeed, the Sixth Circuit construed broad language of that sort ("suggest in any way") <u>against</u> the government in *Warren*, 8 F.4th at 448-49. It would be incongruous to reach a contrary conclusion here. Furthermore, the defendant's position would read the entire clause permitting "all appropriate arguments" out of the agreement because the parties would be unable to make <u>any</u> argument about an unanticipated enhancement at all.

The defendant's claim would be even weaker should the Sixth Circuit review for plain error. Even assuming the defendant could demonstrate that the district court erred by failing to correct the government's alleged breach, the defendant could not show that the error was "plain"— "meaning 'clear' or 'obvious.'" *Simmonds*, 62 F.4th at 967 (citation omitted). "If, upon reading the plea agreement, the scope of the government's promises presents an arguable interpretive question, then by definition any breach cannot qualify as 'clear or obvious.'" *Id.* (quoting *Puckett*,

21

556 U.S. at 143). As the discussion in the preceding paragraphs indicates, "[a]t best," the language of the plea agreement describing how the parties may address Guidelines enhancements that were not accounted for in the plea agreement at sentencing "is ambiguous." *Simmonds*, 62 F.4th at 968. "Thus, absent any objection from the defendant, [the Sixth Circuit] would not expect the district court to intervene sua sponte." *Id.*

The defendant inaccurately claims that "the same prosecuting office here took a position directly contrary to the one it takes now." Mot. 14. For support, he cites a footnote in a government brief that does not interpret or even acknowledge the plea agreement language at issue here, in a case where the issue was not litigated, and where the parties ultimately agreed that an obstruction enhancement applied based on the defendant's post-plea conduct. *Id.* at 15 & n.1. That is hardly evidence that the government has taken an inconsistent position, much less a showing that the government's interpretation of the plea agreement here is incorrect.

None of the decisions that the defendant cites analyzed comparable plea agreement language, with only one exception. *See* Mot. 10-14. And, contrary to the defendant's claim, that one case actually supports the government's interpretation. *See* Mot. 13-14 (citing *United v. Mizell*, 671 F. App'x 826 (2d Cir. 2016) (unpublished)). In *Mizell*, a Second Circuit panel found that the government had breached the plea agreement by "openly disagree[ing] with the plea agreement [Criminal History calculations] in its sentencing submission." 671 F. App'x at 829. However, the defendant ignores that the *Mizell* panel did not reject the government's interpretation of the language addressing unanticipated post-plea Guidelines adjustments. Rather, it stated that "these provisions are not relevant because the government's recalculation of [the defendant's] Criminal History Category did not involve new facts or information, only a change in the

22

government's legal position as to the application of the Guidelines." *Id.* at 830 (emphasis added). As described above, that is plainly not the case here, where the obstruction enhancement was based entirely on the defendant's post-plea conduct. Moreover, in *Mizell*, the government recommended a higher Criminal History based on "inquiries in co-defendants' proceedings." *Id.* at 829. Therefore, the government could not rely on "language of the plea agreement [that] clearly contemplates only inquiries from the district court directed specifically to [the defendant] and his sentence." *Id.* Again, as described above, and as forecasted before sentencing without objection, the government delivered its legal position on the obstruction enhancement following inquiry from the Court.

Finally, the defendant's motion fails to acknowledge that the *Mizell* panel ultimately found that the breach did not warrant resentencing, holding that the defendant's claim failed the third prong of plain-error review because the government's breach did not affect the defendant's sentence. *Id.* at 830. Even if the Sixth Circuit were to find a government breach, it would likely reach the same conclusion here under the plain-error standard. As described on pp. 9-10, *supra*, this Court explicitly stated on the record that it was following its own interpretation of the case law addressing the obstruction enhancement and that neither party needed to request the enhancement for it to apply, underscoring the point that the Court did not interpret the government to be advocating for the enhancement, or that its legal position was persuasive. Moreover, the Court sentenced the defendant to 21 months of imprisonment, a downward variance that was below even the defendant's requested Guidelines range of 27-33 months. The Sixth Circuit found a lack of prejudice in comparable circumstances. *See, e.g.*, *United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011) (finding no error where sentence defendant received was lower than the upper end

of the Guidelines range contemplated in the plea agreement); *United States v. Carter*, 814 F. App'x 1000, 1008-09 (6th Cir. 2020) (same).

## II.    Even if the Government Breached, the Remedy Would Not Be Reversal of the Defendant's Convictions or a Sentence that Does Not Include Imprisonment.

The defendant argues that if he successfully establishes that the government breached the plea agreement it "would likely result in reversal of his convictions by permitting him to withdraw his guilty plea." Mot. 4. That is incorrect. The Supreme Court has stated that "recission is not the only possible remedy; in *Santobello* we allowed for a resentencing at which the Government would fully comply with the agreement—in effect, specific performance of the contract." *Puckett*, 556 U.S. at 137 (citing *Santobello v. New York*, 404 U.S. 257, 263 (1971)); *see Santobello*, 404 U.S. at 263 (remanding to the sentencing judge to determine whether the defendant was entitled "only" to specific performance of the plea agreement, "in which case [the defendant] should be resentenced by a different judge," or whether the defendant should be granted the relief he sought, "the opportunity to withdraw his plea of guilty"). The Sixth Circuit has interpreted *Santobello* to mean that "[a] breached plea agreement may be remedied by either specific performance of the agreement or by allowing the defendant to withdraw the plea." *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990). "The choice between these remedies is not up to the defendant but, rather, rests in the sound discretion of the district court." *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994) (citation omitted).

Thus, in the event of remand, this Court would decide the appropriate remedy based on contract principles of equity. *Puckett*, 556 U.S. at 137-38. At a minimum, the government substantially performed under the plea agreement despite the defendant's earlier repeated breaches and perjurious post-plea conduct giving rise to the Court's contemplation of the obstruction

24

enhancement and the alleged government breach. Therefore, withdrawal of the plea and removal of the defendant's convictions would be a grossly inequitable remedy compared to the alternative of resentencing, where the defendant would likely face the same Guidelines range that he did before this Court, and a comparable term of imprisonment. As a result, even if the defendant could prove a government breach, which, for the reasons stated above, is unlikely under either *de novo* or plain-error review, it is even more unlikely that the government's alleged breach would "result in reversal, an order for new trial, or a sentence that does not include a term of imprisonment." *Chilingirian*, 280 F.3d at 709.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion for release pending appeal.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

COREY R. AMUNDSON
Chief
Public Integrity Section

By:

By:

/s/ Amanda J. Klopf
AMANDA J. KLOPF
Assistant U.S. Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203
(615) 736-5151
Email: amanda.klopf@usdoj.gov

/s/ John P. Taddei
JOHN P. TADDEI
Trial Attorney
1301 New York Ave. NW
Washington, DC 20530
(202) 514-3885
Email: john.taddei@usdoj.gov

REAGAN FONDREN
Attorney for the United States, Acting
under Authority
Conferred by 28 U.S.C. § 515

25

Western District of Tennessee

By:

/s/ David Pritchard_____
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee
167 North Main Street, Suite 800
Memphis, TN 38103
(901) 544-4231
Email: david.pritchard2@usdoj.gov

26

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing response was electronically filed with the Clerk on September 6, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

/s/ John P. Taddei
JOHN P. TADDEI
Trial Attorney