IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:21-CR-00264-1 |
| v. | ) | |
| | ) | JUDGE CRENSHAW |
| BRIAN KELSEY | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY IN SECTION 2255 PROCEEDING

The United States of America, through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Kathryn W. Booth, John D. Keller, Acting Chief of the Public Integrity Section of the United States Department of Justice, John P. Taddei, Trial Attorney, Reagan Fondren, Acting United States Attorney for the Western District of Tennessee, and Assistant United States Attorney David Pritchard, files this response in opposition to Defendant/Movant Brian Kelsey's *Motion for Discovery Pursuant to Rule 6(A) of the Rules Governing Section 2255 Proceedings* (DE 202 ("Mot.")).

Kelsey has failed to satisfy his burden to establish "good cause" for his request, and he has failed to establish that the information he seeks will be "material" to his § 2255 claim. The vast majority of records and information that Kelsey requests are not even relevant to the claim he asserts in his § 2255 petition—prosecutorial misconduct—and would have no effect on the validity of his convictions. This Court should reject Kelsey's discovery Motion or, in the alternative, hold it in abeyance pending full briefing from the government in response to Kelsey's § 2255 petition.

## LEGAL AUTHORITY

"Habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "Rule 6(a) of the Rules Governing § 2255 Proceedings allows the district

court to enable further discovery in a habeas proceeding where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Thomas v. United States*, 849 F.3d 669, 680 (7th Cir. 2017) (citations omitted); *see* Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts[1] (requiring "good cause" in order to "authorize a party to conduct discovery"). "The burden of demonstrating the materiality of information requested is on the moving party." *Stanford*, 266 F.3d at 460. Discovery should not be granted if "[t]he discovery sought by [petitioner] would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor." *Id.* Moreover, "[b]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing." *Thomas*, 849 F.3d at 681 (citing *Stanford*, 266 F.3d at 460).

## ARGUMENT

### I. There Is No Good Cause for Additional Discovery Related to Jeremy Durham's Grand Jury Statements or Interviews.

Kelsey claims that additional discovery is warranted "[t]o fully develop []his argument . . . that the government committed prosecutorial misconduct by drafting statements for [Jeremy Durham] to read to the grand jury that were 'not true.'" Mot. at 1. As the government has already explained in response to Kelsey's motion for bail pending his petition, Kelsey's allegations of prosecutorial misconduct—including conduct related to Jeremy Durham's grand jury testimony—are meritless. *See* DE 207 at 9–11, 19–24.[2] Even if true, they would be insufficient as a matter of

---

[1] *Available at* https://www.uscourts.gov/file/27805/download.

law to sustain Kelsey's request for reversal of his convictions in this collateral proceeding. *See* DE 207 at 9–11, 19–24. As a result, further development of facts related to Durham's grand jury testimony would not demonstrate that his convictions should be reversed. *Thomas*, 849 F.3d at 680. Following his valid guilty plea, Kelsey attempted to relitigate the facts of this case during the proceedings surrounding his request for withdrawal, an effort this Court rejected and stated was "not well taken." DE 119 at 209. This Court should deny Kelsey's attempt to—yet again— relitigate the facts he admitted when he pleaded guilty.

Kelsey has failed to establish "good cause" that would permit an exception to the general rule against discovery in collateral proceedings. In the instant Motion, Kelsey asserts that good cause arises because discovery "would further develop the facts behind a substantial argument that Mr. Kelsey is innocent and is confined illegally because the government unduly influenced Durham's grand jury testimony, unbeknownst to Mr. Kelsey." Mot. at 3. This argument misses the mark entirely. Kelsey is foreclosed from mounting a collateral attack to his convictions or 21- month term of imprisonment on the grounds of "actual innocence." The Sixth Circuit has repeatedly held that freestanding claims of actual innocence are not cognizable in the non-capital habeas context. *See Glover v. Warden, London Corr. Inst.*, No. 17–3362, 2017 WL 8792664, at *3

---

[2] In Kelsey's reply in support of his motion for bail pending his § 2255, Kelsey claims that "the government does not deny that it threatened Jeremy Durham with prosecution if he did not change his story to match the statements that it drafted for him." DE 210 to 1; *see id.* at 3 (stating that "nowhere in its Response does the government deny that Durham was threatened with prosecution if his statement did not confirm to the statement it drafted for him"). This is a clear misrepresentation of the government's response brief, in which it wrote: "Kelsey's allegation that the government took an 'active role in knowingly procuring . . . false testimony and using it to indict an innocent person,' [DE 198] at 18, is spurious and facially absurd." DE 207 at 24. In any event, the government did not—and does not—agree that it coerced Durham's testimony in any way or failed to disclose exculpatory statements.

3

(6th Cir. Oct. 11, 2017) ("Except in death penalty cases, freestanding actual innocence claims are not cognizable in federal habeas proceedings."); *see also* DE 207 at 6 (citing additional cases).

Furthermore, Kelsey has not shown "good cause" with respect to his prosecutorial misconduct allegations. Kelsey's argument that the government committed prosecutorial misconduct by failing to disclose *Brady* materials is based entirely on two surreptitious recordings purportedly made by Kelsey himself, in which Durham allegedly claimed he was coerced by the government to lie in the grand jury.[3] Durham's purported unsworn statements appear to be nothing more than self-serving attempts to deflect blame for the fact that Kelsey was convicted for his crimes. Kelsey has not submitted a sworn affidavit by Durham stating he lied in the grand jury, nor has he presented any evidence that the government was actually in the possession of any undisclosed *Brady* material. Under any standard, the Durham recordings are far from trustworthy eyewitness accounts of government misconduct. Kelsey simply asserts that these recordings undermine Durham's sworn testimony before the grand jury. Even if one were to assume that the recordings undermined his testimony, Kelsey has, at best, identified a factual dispute about whether Durham's credibility is in question. However, it does little to prove that his conviction was constitutionally defective due to prosecutorial misconduct.

This is especially true given that Kelsey personally admitted—under oath—the facts supporting his conviction. *See* DE 73 at 4–9 (plea agreement factual basis). Those facts are *consistent with* Durham's grand jury testimony that Kelsey now claims was false. *Compare id.*,

---

[3] Kelsey also makes a passing reference to the alleged Smith Recording. *See* Mot. at 6. However, even Kelsey admits that the Smith Recording does not form the basis of "good cause" for discovery. He claims Durham's grand jury testimony was the "primary reason" he entered his guilty plea. Mot. at 2. Kelsey has failed to even allege how not having this recording impacted his decision to plead guilty and, as explained below, does not cite any alleged government misconduct related to the Smith Recording as a basis for discovery.

4

*with* DE 148, Ex. 7 at 7–28 (Durham grand jury transcript). It defies credulity that Kelsey would like to conduct discovery to "find out" if Durham's grand jury statements were false, when he himself admitted those same facts were true. "'Solemn declarations in open court carry a strong presumption of verity,' and a defendant's representations during a change-of-plea hearing 'constitute a formidable barrier in any subsequent collateral proceedings.'" *Manigault v. United States*, No. 23–5985, 2024 WL 4766186, at *2 (6th Cir. June 28, 2024) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see* DE 119 at 197 (this Court, quoting *Blackledge* for the same proposition, in its oral order denying Kelsey's motion to withdraw his plea). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citing *Blackledge*, 431 U.S. at 74) (additional citation omitted). "Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'patently incredible' and 'patently frivolous or false,'" for purposes of determining whether there is any need for an evidentiary hearing. *Id.* In the absence of such extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. "Otherwise, a primary virtue of Rule 11 colloquies would be eliminated—'permit[ting] quick disposition of baseless collateral attacks.'" *Id.* at 222 (quoting *Blackledge*, 431 U.S. at 79 n.19).

Kelsey, a trained lawyer, faces the undisputable fact that he stood before this Court and pleaded guilty to Counts 1 and 5 of the Indictment, which charged Kelsey with conspiring to defraud the United States by obstructing the lawful functions of the FEC, and accepting excessive

campaign contributions, respectively. *See* DE 83 (11/22/22 Plea H'g Tr.). Pursuant to that plea, Kelsey entered into a plea agreement with the government, which described Kelsey's unlawful conduct in detail in a factual basis section spanning five pages. DE 73 (plea agreement). In the plea agreement, Kelsey expressly "admit[ted]" that the factual basis was accurate and true, that the conduct it described "establish[ed] his guilt beyond a reasonable doubt," and that he was "in fact guilty" of the charges contained in Counts 1 and 5 of the Indictment. *Id.* At Kelsey's plea hearing, this Court reviewed the plea agreement's factual basis section with Kelsey and asked him whether he had "read each and every word in" it. DE 83 at 9. Kelsey confirmed that he had and agreed that the information in the factual basis section was "true and correct." *Id.* The court further inquired whether Kelsey had "in fact" "engage[d] in the behavior attributed to [him]" "in the factual basis" section, and Kelsey responded yes. *Id.*

To the extent that the Durham recording conflicts with Kelsey's sworn admissions in his plea agreement and Durham's sworn grand jury testimony, those newly minted recordings are "'patently incredible' and 'patently frivolous or false'" for purposes of determining whether there is any need for additional factual development at this stage. *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). The allegations do not give rise to a credible claim that the government failed "to turn over evidence in its possession that is *both* favorable to the accused and material to guilt or punishment." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

Further, Kelsey's suggestion that he pleaded guilty solely because of what Durham said in grand jury is far from credible. Kelsey's explanation for the cause of his guilty plea has shifted considerably over the course of this case. At first, as described above, when Kelsey entered his plea before this Court, Kelsey swore that he was pleading because he was, in fact, guilty and did the things described in the factual basis. DE 73; DE 83. Then, when Kelsey attempted to withdraw

that plea months later, he said that he pleaded guilty "due in large part to the stress of simultaneously dealing with a terminally ill father, newborn twins, and a three-year-old daughter." DE 93 at 13. Then, in his most recent bail motion, Kelsey claimed "[t]he Smith Recording was material because it was Smith's *admission* of guilt that was the immediate impetus for Mr. Kelsey's guilty pleas." DE 198 at 17. Now, in this Motion for discovery, Kelsey claims that Durham's "grand jury testimony was the primary reason Mr. Kelsey entered his guilty plea." DE 202 at 2. These inconsistent explanations further undermine Kelsey's *Brady* claims.

In addition, Kelsey asserts that "[t]he government's entire case against Mr. Kelsey is essentially a 'he said/he said' dispute about what Mr. Kelsey said in phone calls with Jeremy Durham." Mot. at 3. That is simply not accurate. In addition to Kelsey's own sworn admissions of his criminal conduct, other evidence, all of which Kelsey also possessed prior to his plea, independently corroborated Durham's testimony. This evidence included, in part, bank records detailing the transfer of coordinated funds, toll records reflecting calls between Kelsey, Durham, representatives of Political Organization 1, and others, emails and the content of advertisements reflecting coordination, and interview reports and grand jury transcripts of other witnesses. As the parties and this Court already examined in detail during Kelsey's plea withdrawal hearing, the government even presented Kelsey with a roadmap of some of this evidence prior to his guilty plea. *See* DE 119 at 75–76 (Kelsey acknowledging that, in August 2021, the government presented him a detailed reverse proffer).

Further, while brashly accusing the government of committing *Brady* violations, Kelsey completely ignores the fact that the government has already provided Kelsey with broad discovery, including discovery related to Durham's grand jury testimony and prior statements. Following the Indictment, and prior to Kelsey's entry of his guilty plea and sworn plea agreement, the

7

government produced approximately 398,000 individually Bates stamped pages of records and other evidence. Those records included, but were not limited to, FBI 302 reports reflecting witness interviews, including those of Durham and Joshua Smith. The government also provided early disclosure of Durham and Smith's grand jury testimony. As the government will elaborate in its response to Kelsey § 2255 petition, Kelsey and his pre-plea counsel had the ability to review Durham's 302 reports and compare them to his sworn grand jury testimony. The records that were in Kelsey's possession prior to his guilty plea show that Durham's grand jury testimony was materially consistent with his earlier 302 reports, which spanned multiple interviews. *Compare* DE 141, Exs. 3, 4, and DE 148, Ex. 5 (Durham 302 reports), *with* DE 148, Ex. 7 (Durham grand jury transcript). In fact, Kelsey engaged in a detailed comparison of these documents at sentencing as part of his argument for a below-Guidelines sentence. *See* DE 139 at 8–13, 24–25 (Kelsey Sent. Mem.); DE 146 at 15–21 (Kelsey Supp. Sent. Mem.).

Moreover, even if Kelsey believed Durham's story was inconsistent or that the government's case against him was weak, Kelsey, an attorney himself, and his experienced criminal counsel had the ability to weigh any potential variation before he decided to plead guilty and waive his right to challenge potential witness testimony by Durham or others at trial. These facts, already in Kelsey's possession, severely undermine Kelsey's claim that the government manipulated Durham into giving false grand jury testimony and buried exculpatory statements, or that alleged inconsistencies between Durham's testimony and his prior interviews, which were reflected in 302 reports, affected Kelsey's decision to plead guilty or undermine confidence in the validity of his convictions.

Because Kelsey has failed to demonstrate good cause, and because Kelsey's proffered *Brady* claim related to Durham's grand jury testimony is insufficient to sustain his § 2255 petition

8

on the merits, his discovery claim should be denied. *See Thomas*, 849 F.3d at 681 (holding that petitioner's "request for discovery fails for much the same reason that his *Brady* claim fails on the merits").

## II. Kelsey's Additional Discovery Requests Are Unrelated to His Single Proffered § 2255 Claim and There Is No Good Cause for Them.

Kelsey's additional discovery requests fail because they are not relevant to his § 2255 claim. Kelsey requests that this Court order discovery of a litany of additional materials, including: discovery regarding "other prosecutions [that] were foregone against Durham in return for his testimony against Mr. Kelsey," *id.* at 4; discovery of Durham's alleged "drunken, sobbing voicemails to some friends about [Kelsey's] situation," *id.* at 4–5; "discovery of Durham's use of drugs and alcohol, legal and illegal," *id.* at 5–6; and "discovery regarding how [the government] handled the Smith Recording," *id.* at 6. These additional discovery requests are not related to the circumstances surrounding Durham's grand jury testimony, which is the only § 2255 claim he proffers as a basis for discovery. *See* Mot. 1 (claiming "good cause" because "Durham now recants his grand jury testimony"); *id.* at 2 ("good cause exists because [of] the specific allegations of prosecutorial misconduct before the court regarding the grand jury"); *id.* at 10 (claiming discovery is material because "[h]ad [Kelsey] known that Durham initially exculpated him but was pressured to reverse himself prior to testifying before the grand jury, Mr. Kelsey never would have pleaded guilty").

Kelsey's request for these additional materials, described in Parts III through VI of his Motion, and all associated document requests and interrogatories, should be denied for failure to even allege that they are related to his sole proffered reason for requesting discovery: his claim of prosecutorial misconduct related to Durham's grand jury testimony. Moreover, Kelsey makes no

9

argument these items are material to *any* claim of prosecutorial misconduct that could lead to relief from his convictions.

Many of the records he requests are materials that have already been in his possession for a long time. This is clear because he described them, almost verbatim, in his sentencing memorandum. *See* DE 139 at 25 & nn.27, 29 (describing Durham's "extensive histor[y] of unrelated bad acts," including that, prior to 2015, "[l]aw enforcement in Williamson County ha[d] accused him of altering a prescription to receive a controlled substance, presumably due to addiction" and that "in February 2017, the Tennessee Registry of Election Finance released an audit of Durham's campaign finances, which found a combined total of approximately 300 unique statutory violations of the State's campaign finance disclosure laws"). Inexplicably, Kelsey does not disclose to this Court in his current Motion that he already possessed this evidence of events that occurred long before he entered his guilty plea in November 2022, and therefore it could not have plausibly affected his decision to plead guilty. *See* Mot. at 4–6. Moreover, it strains credulity that Kelsey, Durham's former roommate and the best man at Durham's wedding, with whom he concededly spoke regularly on the phone during the timeframe of the offense, was not aware of these allegations prior to pleading guilty.

Kelsey requests records related to prosecutions "forgone against Durham in return for his testimony." Mot. at 4. The allegation that the government engaged in some sort of *quid pro quo* with Durham is nothing more than a "[b]ald assertion[] and conclusory allegation[]," *Thomas*, 849 F.3d at 681, based on a false premise. For other alleged evidence—like Durham's purported "voicemails to some friends," Mot. at 4–5—Kelsey's provides no reason to believe that they have ever been in the government's possession. He makes no attempt to connect them to a viable § 2255 claim. Kelsey does not connect his request for discovery of "how [the government] handled the

10

Smith Recording," Mot. at 6, to any Durham-related claim of prosecutorial misconduct cited in this Motion. Still other requests—such as "[a]ll investigation file documents and all correspondence from any U.S. Department of Justice current or former employee regarding" charging decisions related to Kelsey and Durham in any case over the span of seven years, Mot. 7—are incredibly broad, largely privileged, and undiscoverable.

In any event, even a hypothetical prosecutorial misconduct claim based on any of these materials would inevitably fail to result in reversal of Kelsey's convictions for many of the same reasons summarized on pages 3–9, *supra*, described in more detail in the government's response to Kelsey's bail motion, DE 207 at 9–11, 19–24, and as will be described even more exhaustively in the government's forthcoming response to Kelsey § 2255 petition. *Cf. Stanford*, 266 F.3d at 460 (denying discovery because "[t]he discovery sought by [petitioner] would not resolve any factual disclosure that could entitle him to relief"). Given Kelsey's failure to even attempt to connect these materials to any § 2255 claim, much less a viable one, and the breathtaking sweep of the documents and interrogatories he seeks, his requests are nothing more than "a fishing expedition masquerading as discovery." *Id.* at 460. They should be denied.

## CONLCUSION

This Court should deny Kelsey's motion for discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings or, in the alternative, hold it in abeyance pending full briefing from the government in response to Kelsey's § 2255 petition.

Respectfully submitted,

ROBERT E. MCGUIRE                                    JOHN D. KELLER
Acting United States Attorney                        Acting Chief
Middle District of Tennessee                         Public Integrity Section

By:                                                  By:

*/s/ Kathryn W. Booth*_____                    */s/ John P. Taddei*_____
KATHRYN W. BOOTH                                     JOHN P. TADDEI
Assistant U.S. Attorney                              Trial Attorney
719 Church Street, Suite 3300                        1301 New York Ave. NW
Nashville, TN 37203                                  Washington, DC 20530
(615) 736-5151                                       (202) 514-3885
Email: kathryn.booth@usdoj.gov                       Email: john.taddei@usdoj.gov


REAGAN FONDREN
Attorney for the United States, Acting
under Authority of 28 U.S.C. § 515
Western District of Tennessee

By:

*/s/ David Pritchard*_____
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee
167 North Main Street, Suite 800
Memphis, TN 38103
(901) 544-4231
Email: david.pritchard2@usdoj.gov

**CERTIFICATE OF THE SERVICE**

I certify that a copy of the foregoing response in opposition was served electronically, via ECF, this 6th day of February 2025, upon all counsel of record in the case.

*s/ Kathryn W. Booth*
KATHRYN W. BOOTH
Assistant U.S. Attorney
