UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:21-cr-00264-1 |
| BRIAN KELSEY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Brian Kelsey's Emergency Motion for Release Pending Decision on His Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Doc. Nos. 197 and 198). The Government filed a response in opposition, (Doc. No. 207), and Kelsey replied (Doc. No. 212). For the following reasons, the motion will be denied.

**I. BACKGROUND**

The Court assumes familiarity with the events in this case and will focus only on those facts necessary to resolve this time sensitive "emergency" motion.

As the Sixth Circuit summarized, Kelsey was indicted on five counts related to an alleged conspiracy to violate federal campaign-finance laws. (Doc. No. 1). He eventually entered into a plea agreement and agreed to plead guilty to Counts One and Five of the Indictment in exchange for the Government dropping the other counts and agreeing to recommend only certain sentencing enhancements to this Court. (Doc. Nos. 72 and 73). On November 22, 2022, Kelsey appeared before this Court for a change of plea hearing and confirmed under oath that he read every word of the "Factual Basis" section of his plea agreement, (Doc. No. 73 ¶ 7), that each word was true and accurate, and that he in fact engaged in the criminal behavior described in that section. (See

Doc. No. 83 at 8–10). He also wrote his initials on every page of the Factual Basis section in the plea agreement itself. (See Doc. No. 73 at 4–9). His agreed facts demonstrated that Kelsey, a trained lawyer and "who at the relevant time was a Tennessee state senator running for a seat in the United States House of Representatives, conspired with several individuals to move money from his state senate campaign committee through various political action committees for the benefit of [his] federal campaign committee." (Doc. No. 188 at 3 (citing Doc. No. 73 ¶ 7)). And these facts—which Kelsey knowingly and voluntarily confirmed under penalty of perjury were true and accurate—prove that Kelsey is guilty of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One), and aiding and abetting the acceptance of excessive contributions, in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(1)(A)(i) (Count Five). (See Doc. No. 83 at 18–19).

Four months later, on March 17, 2023, Kelsey moved to withdraw his guilty plea because: (1) "he pleaded guilty to something that is not a crime," (2) he "entered the plea at issue with an unsure heart and confused mind," and (3) his "inexperience with the criminal justice system contributed to the plea agreement." (Doc. No. 93 at 2). The Court held a lengthy evidentiary hearing on May 16, 2023, after which it denied Kelsey's motion to withdraw his plea. (Doc. No. 116). The Court found that it followed all of the Federal Rule of Criminal Procedure 11 prerequisites during Kelsey's November 22, 2022 plea hearing,[1] and that Kelsey knowingly and voluntarily entered his plea. (See Doc. No. 119 at 196–209). The Court further explained that it found Kelsey's testimony incredible, and that the Court did not (and does not) believe that a Georgetown-educated lawyer and former State Senator, who served in the Tennessee General Assembly for almost 20 years and chaired the Senate Judiciary Committee, did not understand the

---

[1] Kelsey does not dispute that the Court fully complied with Rule 11 at the change of plea hearing.

solemnity and gravity of entering a guilty plea and agreeing to the Factual Basis section of his plea agreement. (Id.). In addition, the Court found it noteworthy that five lawyers represented Kelsey at the plea hearing (two of whom were former United States Attorneys for the Middle District of Tennessee), and that those experienced lawyers would have kept Kelsey "informed of all drafting and negotiations of the plea petition and the plea agreement, as well as preparation for the plea hearing." (Id. at 85–86, 207).

At sentencing on August 11, 2023, the Court determined that a two-level enhancement for obstruction of justice applied because Kelsey committed perjury during the May 16, 2023 plea-withdrawal hearing. (Doc. No. 157 at 14–19). Specifically, the Court found that Kelsey committed perjury when *he* testified: (1) "he was not truthful when he told the Court that he was, in fact, guilty of Counts One and Five," and (2) "he was not truthful when he told the Court that he, in fact, engaged in the behavior set forth in the factual basis section of his plea agreement." (Id. at 18). After applying the enhancement, the Court sentenced Kelsey to 21 months of imprisonment, which was a significant downward variance from his guideline range of 33 to 41 months. (See Doc. No. 155, as amended in Doc. No. 159).

Kelsey appealed his sentence on the sole ground that the Government allegedly breached the plea agreement by advocating for a two-level obstruction of justice enhancement. (Id. at 1; see also Doc. No. 158). In affirming Kelsey's sentence, the Sixth Circuit found that it would apply plain error review, rather than *de novo* review, to the issue of whether the Government breached the plea agreement because "Kelsey's counsel failed to object adequately to any purported breach in this case." (Doc. No. 188 at Page: 8). The panel concluded that Kelsey could not show plain error because even if the Government breached the plea agreement (an issue the panel did not decide), "it is unclear how any breach prejudiced Kelsey" when he still "received the key benefit

of the plea agreement—a sentence not only within the range contemplated by the parties, but *below* it[.]" (Id. at Page: 10). In a separate concurring opinion, Judge Raymond Kethledge explained that he would have affirmed Kelsey's sentence under *de novo* review because, among other things, "Kelsey disputes neither that he committed perjury at his plea-withdrawal hearing nor that the obstruction enhancement was applicable." (Id. at Page: 14).

The Court previously granted Kelsey's motion to remain on release from custody pending resolution of his appeal. (See Doc. No. 177 at 8). However, Kelsey's release pending appeal expired when the Sixth Circuit affirmed his sentence (Doc. No. 188), and the Supreme Court denied his writ of certiorari (Doc. No. 196). The Court has been advised that Kelsey must report to the Bureau of Prisons ("BOP") to begin serving his custodial sentence on February 24, 2025. (Doc. No. 206).

Kelsey seeks to delay his report to the BOP based upon his Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255. (Doc. No. 197). In his § 2255 motion, Kelsey argues that the Court must vacate his Judgment because: (1) he received ineffective assistance from his counsel's failure to make appropriate objections and appeal valid issues; (2) his due process rights were violated because the Government failed to produce three allegedly exculpatory audio recordings; and (3) he is actually innocent. (Doc. Nos. 200, 201). At issue now is whether the Court should grant Kelsey's emergency motion for release pending decision on his § 2255 motion.[2]

## II. <u>LEGAL STANDARD</u>

District courts may grant release to a petitioner while his § 2255 proceeding is pending, but only if he can show both that: (1) his § 2255 motion raises a substantial claim of law suggesting that he is unconstitutionally confined; and (2) there are exceptional circumstances deserving

---

[2] The parties do not dispute that Kelsey is "in custody" for purposes of being permitted to file a § 2255 motion. (See Doc. No. 200 ¶ 3).

special treatment for release during that time. See Dotson v. Clark, 900 F.2d 77, 79 (6th Cir. 1990) (citation omitted); see also United States v. DeCarlo, No. 21-00073, 2024 WL 4039923, at *3 (D.D.C. Sept. 4, 2024). This two-pronged standard is "more stringent" than the standard for release pending appeal. See Fonseca v. United States, 129 F. Supp. 2d 1096, 1098–99 (E.D. Mich. 2001) (citations omitted). Indeed, the standard is so high that "[t]here will be few occasions where a prisoner will meet" it. United States v. Philips, No. 3:23-cr-00054-RGJ, 2024 WL 5089566, at *1 (W.D. Ky. Dec. 12, 2024) (quoting Dotson, 900 F.2d at 79); see also Fonseca, 129 F. Supp. 2d at 1099 (quoting Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985) (Posner, J.)) ("A court's power to grant bail in a Section 2255 case should be used sparingly" because "[a] defendant whose conviction has been affirmed on appeal . . . is unlikely to have been convicted unjustly.").

### III. ANALYSIS

Applying the above two-pronged test, the Court finds that Kelsey's motion clearly fails on the second prong because he has not shown any exceptional circumstances for his release "deserving of special treatment in the interests of justice." Dotson, 900 F.2d at 79 (citation omitted). "For circumstances to be exceptional, they must be rare." DeCarlo, 2024 WL 4039923, at *6 (citations omitted). Neither the Supreme Court nor the Sixth Circuit have provided definitive guidance on what meets this standard, but unpublished district court decisions from this Circuit "suggest that 'exceptional circumstances' warranting release during review [of a § 2255 motion] have been limited to situations where (1) the prisoner was gravely ill, (2) the prisoner committed a minor crime and is serving a short sentence, or (3) possibly where there was an extraordinary delay in processing the habeas petition." Blocksom v. Klee, No. 11-cv-14859, 2015 WL 300261, at *4 (E.D. Mich. Jan. 22, 2015) (citations and internal quotation marks omitted). None of those circumstances exist here.

Kelsey makes three overarching arguments for why his motion is exceptional and deserving of rare special treatment: (1) his ineffective assistance of counsel claim is exceptionally strong and supported by binding Sixth Circuit precedent; (2) the Government committed exceptional misconduct by withholding three allegedly exculpatory recordings from two of its "star witnesses," and (3) "the Court ruled that Mr. Kelsey did not 'engage[] in the behavior set forth in the factual basis'" of his plea agreement. (See Doc. Nos. 208, 210). The Court is not persuaded that any of these arguments qualify as exceptional circumstances for release.

First, Kelsey contends that his claim of "ineffective assistance of counsel in failing to object to the plea agreement breach is exceptionally strong because" the Sixth Circuit "has largely decided the issue of ineffective assistance of counsel already" in his favor. (Doc. No. 198 at 3, 21). As an initial matter, the Court notes that "[a]n ineffective assistance of counsel claim . . . does not present an extraordinary circumstance" even if supported by case law. See United States v. Bankhead, No. 2:18-cr-20784, 2020 WL 673861, at *3 (E.D. Mich. Jan. 7, 2020) (citation omitted) (noting that "there is nothing unusual about a claim of unlawful confinement in a habeas proceeding").

Even if a strong ineffective assistance of counsel claim could somehow constitute an exceptional circumstance for release, Kelsey's characterization of the Sixth Circuit's opinion in this case is wrong. As explained above, the Sixth Circuit held that "plain-error review applies" to Kelsey's direct appeal because his counsel failed to object to the Government's alleged breach of the plea agreement at sentencing. (Doc. No. 188 at Page: 8). The Sixth Circuit did not decide, as Kelsey argues, that Kelsey has a valid claim for ineffective assistance based on his counsel's failure to object. Instead, the panel held that Kelsey could not show plain error because even if his counsel rendered *deficient performance* for failing to object to the alleged breach, "Kelsey cannot show

*prejudice*" from the breach because he received a sentence lower than his guideline range. (Doc. No. 188 at Pages: 10–12 (emphasis added)). Kelsey's failure to show prejudice for purposes of plain error review strongly suggests he cannot prove his ineffective assistance of counsel claim, which itself requires a showing of deficient performance *and* prejudice. See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Cameron v. United States, No. 16-CV-20183-COOKE, 2017 WL 8233888, at *4 (S.D. Fla. Mar. 30, 2017) (citing Mincey v. Head, 206 F.3d 1106, 1147 (11th Cir. 2000)) (noting that other courts have "found that the prejudice standard for excusing a procedural default and the prejudice standard for determining ineffective assistance of counsel are the same"). So, yes, the Sixth Circuit "has largely decided the issue of ineffective assistance of counsel already," (Doc. No. 198 at 21), but not in Kelsey's favor. Accordingly, the Court does not find that the purported strength of Kelsey's ineffective assistance of counsel claim is an exceptional circumstance warranting release.

Second, Kelsey contends that the Government's alleged misconduct in this case presents exceptional circumstances because it allegedly failed to produce three exculpatory recordings from two "star witnesses," and because its case at trial would be much weaker without those witnesses. (Id. at 3–4, 15–21). Even assuming, without deciding, that the Government improperly withheld exculpatory evidence from Kelsey, that does not change that when Kelsey appeared for a change of plea hearing, he confirmed under oath that he in fact engaged in the behavior described in the Factual Basis section of his plea agreement. (See Doc. No. 83 at 8–10). In addition to admitting to those facts, Kelsey confirmed under penalty of perjury that he was guilty of Counts One and Five as follows:

> THE COURT: And again, do you understand that by pleading guilty, and aside from appealing your sentence in the limited -- in the limited ways outlined, and we discussed, in your plea agreement, especially if I sentence you within a guideline

> range, whatever that may be, you cannot later come to this Court or go to any other court and claim that you're not guilty or that your rights have been violated?
>
> [KELSEY]: Yes, Your Honor. I understand that.
>
> THE COURT: And having heard from me what your rights are and what may occur if you plead guilty, do you still want to give up your right to a trial and plead guilty?
>
> [KELSEY]: I do, Your Honor.
>
> THE COURT: Then how do you plea on Counts One and Five?
>
> [KELSEY]: Guilty, Your Honor.
>
> THE COURT: Are you pleading guilty on both counts?
>
> [KELSEY]: Yes, Your Honor.
>
> THE COURT: Are you pleading guilty because you, in fact, engaged in that criminal behavior?
>
> [KELSEY]: Yes, Your Honor.

(Doc. No. 83 at 18–19). Given Kelsey's unconditional admission of guilt, it no longer matters what the Government could, or could not, prove at trial or whether Kelsey could impeach certain witnesses. Regardless of whether the Government did something nefarious by not disclosing these recordings sooner, Kelsey's allegations of Government misconduct do not erase his guilty plea or his admission to the Factual Basis of his plea agreement to create an exceptional circumstance for him to be released.

Third, Kelsey argues that his situation is exceptional because "at sentencing, the Court ruled that [he] did not 'engage[] in the behavior set forth in the factual basis'" of his plea agreement, (Doc. No. 210 at 10), and that "[t]his Court has found that Mr. Kelsey's statements that he was guilty are false," (Doc. No. 198 at 25). The Court finds this argument misleading at best. During the May 16, 2023 plea-withdrawal hearing, the Court found that Kelsey committed perjury

8

Case 3:21-cr-00264    Document 215    Filed 02/18/25    Page 8 of 10 PageID #: 2275

when he testified that "the factual statements in the plea agreement that he told [the Court] were true and correct [on November 22, 2022,] were actually incorrect[.]" (Doc. No. 119 at 109). At sentencing, the Court again explained that Kelsey committed perjury during the May 16, 2023 hearing when *he* said: (1) "he was not truthful when he told the Court that he was, in fact, guilty of Counts One and Five;" and (2) "he was not truthful when he told the Court that he, in fact, engaged in the behavior set forth in the factual basis section of his plea agreement." (Id. at 18). Stated differently, the Court found that Kelsey committed perjury at the plea-withdrawal hearing when he falsely testified he was innocent of Counts One and Five, and when he told the Court he did not engage in the behavior described in the Factual Basis section of the plea agreement. That is exactly why the Court *denied* Kelsey's motion to withdraw his guilty plea: the Court believed Kelsey was telling the truth when he pled guilty on November 22, 2022, and that he was lying when he tried to withdraw his plea on May 16, 2023. The Court will give Kelsey the benefit of the doubt and assume he merely misread the Court's statements at sentencing, but it sees no reason to address this argument any further. What matters is that, at bottom, Kelsey has not demonstrated any exceptional circumstances here that deserve special treatment in the interests of justice.

Because Kelsey has not satisfied prong two of the stringent two-part standard for release pending his habeas proceedings, the Court will deny Kelsey's motion without needing to delve too much into whether he satisfied prong one by showing that his § 2255 motion raises substantial claims of law. That said, the Court has reviewed and considered the parties' arguments on the first prong and has serious concerns about whether Kelsey's § 2255 motion raises any meritorious legal claims. For example, Kelsey argues that his counsel was ineffective for failing to object to the Government's potential breach of the plea agreement, but for the reasons discussed in the Sixth Circuit's opinion and Judge Kethledge's concurrence he has not shown any prejudice from the

alleged breach. (Doc. No. 201 at 21–23). He also dedicates a substantial portion of his motion to accusing the Government of discovery misconduct, but that alleged misconduct would not impact Kelsey's sentence or his decision to plead guilty. (See id. at 31–56). Kelsey further contends his counsel was ineffective for failing to appeal the Court's denial of his motion to withdraw his guilty plea, but the sole support for that argument is his factually incorrect theory that "this Court made a factual finding that Mr. Kelsey was innocent." (Id. at 23–24). Without any other arguments on this issue, Kelsey's § 2255 motion offers no valid reason for why the Court should vacate his guilty plea, especially when he *knowingly and voluntarily admitted that he engaged in the criminal conduct described in the Factual Basis of his plea agreement*. The Court will further address these issues on the merits when Kelsey's § 2255 motion is fully briefed and ripe for review. For now the Court concludes that his motion does not raise any substantial claims of law to support the "rare" remedy of release pending habeas proceedings.

IV. **CONCLUSION**

For the foregoing reasons, Kelsey's Emergency Motion for Release Pending Decision on His Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 197) is **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE